UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


IN RE AURORA DAIRY CORP.             )
ORGANIC MILK MARKETING               )        Case No. 4:08MD01907 ERW
AND SALES PRACTICES LITIGATION       )

This Order Relates to:
*Mothershead, et al. v. Aurora Organic Dairy*        Case No. 4:07CV01701 ERW
*Koch v. Aurora Dairy Corporation*                   Case No. 4:08CV00254 ERW
*Fiallos v. Aurora Dairy Corporation*                Case No. 4:08CV00280 ERW
*Freyre, et al. v. Aurora Dairy Corporation*         Case No. 4:08CV00303 ERW
*Still et al. v. Aurora Dairy Corporation*           Case No. 4:08CV00305 ERW
*Kaye v. Aurora Dairy Corporation*                   Case No. 4:08CV00371 ERW
*Hudspeth et al. v. Target Corporation*              Case No. 4:08CV00374 ERW
*Bowen v. Wal-Mart Stores, Inc.*                     Case No. 4:08CV00382 ERW
*Cockrell v. Aurora Dairy Corporation*               Case No. 4:08CV00384 ERW
*Snell, et al. v. Aurora Dairy Corporation, et al.*  Case No. 4:08CV00385 ERW
*Tysseling-Mattiace v. Wild Oats Market, Inc.*       Case No. 4:08CV00386 ERW
*West et al. v. Aurora Dairy Corporation*            Case No. 4:08CV00387 ERW
*Hesse v. Costco Wholesale Corporation, et al.*      Case No. 4:08CV00391 ERW
*White, et al. v. Aurora Dairy Corporation*          Case No. 4:08CV00444 ERW
*Cowan v. Aurora Dairy Corporation, et al.*          Case No. 4:08CV00466 ERW
*DiSimone v. Aurora Dairy Corporation, et al.*       Case No. 4:08CV00526 ERW
*Gallardo v. Aurora Dairy Corporation*               Case No. 4:08CV01460 ERW
*Riley v. Safeway, Inc.*                             Case No. 4:08CV01462 ERW
*King v. Safeway, Inc.*                              Case No. 4:08CV01464 ERW


**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants' Motion to Strike the Consolidated

Complaint [doc. #96], Motion to Dismiss of Aurora Dairy Corporation [doc. #98], Motion to

Dismiss of the Retailer Defendants [doc. #102], Motion to Dismiss of Defendant QAI, Inc. [doc.

#104], Plaintiffs' Motion for Leave to File Amended Class Action Complaint [doc. #116] and

Defendants' Motion to Strike and Memorandum in Support Regarding Plaintiffs' Submission

Styled "Notice of Supplemental Authority" [doc. #125].

# I.    LEGAL STANDARD

Defendants move to dismiss Plaintiffs' claims for failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6).  In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must take all facts alleged in the complaint to be true and must construe the pleadings in the light most favorable to Plaintiff. *Chambers v. St. Louis County*, 247 F.App'x 846, 848 (8th Cir. 2007) (citing *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995)).  While a plaintiff does not have to "set out *in detail* the facts upon which he basis his claim," Fed. R. Civ. P. 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 n.3 (2007) (emphasis in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

The factual allegations contained in the pleadings must "raise a right to relief above the speculative level."  *Bell Atlantic Corp.*, 127 S. Ct. at 1959.  "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  *Id.* (internal citations and quotations omitted).  Therefore, "the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."  *Wiles v. Capitol Indemnity Corp.*, 280 F.3d 868, 870 (8th Cir. 2002).

Courts analyzing Fed. R. Civ. P. 12(b)(6) motions must exclude  "matters outside the pleadings," or the motion is treated as a motion for summary judgment.  Fed. R. Civ. P. 12(d). Defendants ask that the Court dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6), however, they provided the Court with detailed information concerning the history of the Organic

Foods Production Act ("OFPA")[1] and the National Organic Program ("NOP"),[2] along with information detailing the events leading to the filing of the pending actions. Plaintiffs responded by submitting an affidavit contesting some of the information Defendants submitted to the Court.

When presented with "a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court is 'not precluded in [its] review of the complaint from taking notice of items in the public record." *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 269 n.1 (1986)). Motions to dismiss "are not automatically converted into motions for summary judgment simply because one party submits additional matters in support of or opposition to the motion." *Levy*, 47 F.3d at 991 (quoting *Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999)). "Some materials that are part of the public record or do not contradict the complaint may be considered by a court in deciding a Rule 12(b)(6) motion." *Id.* However, consideration of "any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings" will convert a motion into one for summary judgment. *Hamm v. Rhone-Poulenc Rorer Pharm., Inc.,* 187 F.3d 941, 948 (8th Cir.1999). The Court has reviewed the information submitted by the Parties, and finds that the information contained in the Background and Procedural History section below is appropriate for the Court's consideration under Fed. R. Civ. P. 12(b)(6).

---

[1] The Preamble of the OFPA states that it is intended "(1) to establish national standards governing the marketing of certain agricultural products as organically produced; (2) to assure customers that organically produced products meet a consistent standard; and (3) to facilitate interstate commerce in fresh and processed food that is organically produced." 7 U.S.C. § 6501.

[2] Congress delegated authority to the USDA to develop a national organic program, and the NOP was promulgated after notice and comment. The NOP regulations create a "uniform standard of production and handling for organic agricultural products in the United States." 71 Fed. Reg. 24,820.

## II.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs have brought several lawsuits, alleging that Aurora Dairy Corporation ("Defendant Aurora") misled them into believing that the milk they were purchasing was "organic" or "USDA Organic," when the milk failed to meet organic standards. They assert that they paid artificially high prices for Defendant Aurora's milk, and seek recovery under several state laws. The Plaintiffs in the *Freyre* action[3] moved, under 28 U.S.C. § 1407, for the centralization of this litigation in the District of Colorado. This motion was opposed. On February 20, 2008, the United States Judicial Panel on Multidistrict Litigation determined that these lawsuits involved "common questions of fact and that centralization under Section 1407 in the Eastern District of Missouri will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation." Transfer Order [doc. #1].

The original lawsuits, along with others that were subsequently filed, have been transferred and centralized before this Court. On April 2, 2008, the Court issued a Memorandum and Order directing Plaintiffs to file a consolidated complaint. Plaintiffs filed their Consolidated Class Action Complaint [doc. #79] on July 18, 2008. In their Consolidated Complaint, Plaintiffs sought to recover from Defendant Aurora, Quality Assurance International, Inc. ("Defendant QAI"), Costco ("Defendant Costco"), Safeway ("Defendant Safeway"), Target ("Defendant Target"), Wal-Mart ("Defendant Wal-Mart"), Wild Oats ("Defendant Wild Oats"), Whole Foods ("Defendant Whole Foods"), and Publix ("Defendant Publix"). The Plaintiffs enumerated the following causes of action[4] in their Consolidated Class Action Complaint.[5]

---

[3] Rebecca and Fernando Freyre filed one of the first lawsuits against Defendant Aurora.

[4] In their claims that are not based upon a specific state statute, for example "Violation of State Consumer Protection Laws," Plaintiffs state that each Plaintiff is bringing their claim under the law of the state in which they made their purchase, and on behalf of others who made purchases "in states having similar consumer protection laws." These claims then list relevant

**Counts Against Defendant Aurora**
>Count 1 - Violation of the Colorado Consumer Protection Act
>Count 2 - Violation of State Consumer Protection Laws
>Count 3 - Breach of Express Warranty
>Count 4 - Breach of Implied Warranty of Merchantability
>Count 5 - Negligence Per Se
>Count 6 - Negligent Misrepresentation
>Count 7 - Unjust Enrichment

**Counts Against Defendant Aurora With Respect to the High Meadow Label**
>Count 8 - Violation of the Colorado Consumer Protection Act
>Count 9 - Violation of State Consumer Protection Laws
>Count 10 - Breach of Express Warranty
>Count 11 - Breach of Implied Warranty of Merchantability
>Count 12 - Negligence Per Se
>Count 13 - Negligent Misrepresentation
>Count 14 - Unjust Enrichment

**Counts Against Defendant Costco**
>Count 15 - Violation of the Washington Consumer Protection Act
>Count 16 - Violation of State Consumer Protection Laws
>Count 17 - Breach of Express Warranty
>Count 18 - Breach of Implied Warranty of Merchantability
>Count 19 - Negligence Per Se
>Count 20 - Negligent Misrepresentation
>Count 21 - Unjust Enrichment

**Counts Against Defendant Safeway**
>Count 22 - Violation of the California Unfair Competition Law
>Count 23 - Violation of the California Consumer Legal Remedies Act
>Count 24 - Violation of State Consumer Protection Laws
>Count 25 - Breach of Express Warranty
>Count 26 - Breach of Implied Warranty of Merchantability
>Count 27 - Negligence Per Se
>Count 28 - Negligent Misrepresentation
>Count 29 - Unjust Enrichment

---

state statutes, where applicable.

[5] After Plaintiffs filed their Consolidated Class Action Complaint on July 18, 2008, Defendants filed their pending Motions to Dismiss in response to this Complaint, as well as a Motion to Strike the Consolidated Complaint. Defendants allege that instead of consolidating their claims, Plaintiffs improperly, and materially, amended and altered the claims and parties. In response, Plaintiffs have asked the Court for leave to file a First Amended Consolidated Complaint. Because the Court finds that the basis for all of Plaintiffs' claims is preempted, the Court will not address these two Motions. The Court lists these causes of action from the Consolidated Class Action Complaint, because it is the Complaint to which the Motions to Dismiss are directed. This does not indicate that Plaintiffs' alteration of the claims and parties in this action have been approved or accepted by the Court.

**Counts Against Defendant Target**
    Count 30 - Violation of the Minnesota Uniform Deceptive Trade Practices Act
    Count 31 - Violation of State Consumer Protection Laws
    Count 32 - Breach of Express Warranty
    Count 33 - Breach of Implied Warranty of Merchantability
    Count 34 - Negligence Per Se
    Count 35 - Negligent Misrepresentation
    Count 36 - Unjust Enrichment

**Counts Against Defendant Wal-Mart**
    Count 37 - Violation of the Arkansas Consumer Protection Act
    Count 38 - Violation of State Consumer Protection Laws
    Count 39 - Breach of Express Warranty
    Count 40 - Breach of Implied Warranty of Merchantability
    Count 41 - Negligence Per Se
    Count 42 - Negligent Misrepresentation
    Count 43 - Unjust Enrichment

**Counts Against Whole Foods and Wild Oats[6]**
    Count 44 - Violation of the Colorado Consumer Protection Act
    Count 45 - Violation of State Consumer Protection Laws
    Count 46 - Breach of Express Warranty
    Count 47 - Breach of Implied Warranty of Merchantability
    Count 48 - Negligence Per Se
    Count 49 - Negligent Misrepresentation
    Count 50 - Unjust Enrichment

**Counts Against Defendant Publix**
    Count 51 - Breach of Express Warranty
    Count 52 - Breach of Implied Warranty of Merchantability

**Counts Against Defendant QAI**
    Count 53 - Violation of the California Unfair Competition Law
    Count 54 - Violation of the California Consumer Legal Remedies Act
    Count 55 - Violation of State Consumer Protection Laws
    Count 56 - Negligence Per Se
    Count 57 - Negligent Misrepresentation

Plaintiffs subsequently voluntarily dismissed their claims against Defendant Publix and Defendant

Whole Foods. Plaintiffs' claims against Defendant Costco, Defendant Safeway, Defendant

Target, Defendant Wal-Mart and Defendant Wild Oats (collectively, "Retailer Defendants"), as

---

[6] In their Complaint, Plaintiffs state that Defendant Whole Foods is the successor in liability to Defendant Wild Oats because Defendant Whole Foods acquired Defendant Wild Oats in or about August 2007. Plaintiffs subsequently voluntarily dismissed their claims against Defendant Whole Foods, stating that Defendant Whole Foods did not assume the liabilities of Defendant Wild Oats in this transaction.

well as Plaintiffs' claims against Defendant Aurora and Defendant QAI, are still pending before the Court.

Defendant Aurora is a dairy that has been producing organic milk and milk products since 2003. Defendant Aurora has several farms and a milk processing plant. Each of these facilities is operated under an Organic System Plan ("OSP"). An OSP details the practices and procedures that will be used at the facility to ensure organic production. Each of Defendant Aurora's facilities possessed an OSP that was approved by either Defendant QAI or the Colorado Department of Agriculture ("CDA").

Pursuant to the OFPA, the USDA created a program for the accreditation of certifying agents. Both the CDA and Defendant QAI are accredited as certifying agents by the USDA. In this role, they serve as subordinate decision makers of the USDA, certifying production and handling operations in compliance with NOP regulations. Additionally, when necessary, they initiate compliance actions to enforce NOP requirements. Certifying agents are monitored by the USDA, and must renew their accreditations every five years. To become a certifying agent, an entity must have sufficient experience in farming and handling techniques because certifying agents are given discretion to interpret and implement the NOP. Defendant QAI is the certifying agent for Defendant Aurora's milk processing plant in Colorado and dairy farms in Dublin, Texas. CDA is the certifying agent for all of Defendant Aurora's dairy farms in Colorado.

From 2003 to the present, Defendant Aurora has held certifications from either Defendant QAI or the CDA for each of its dairy farms and the milk processing plant. These certifications have never been revoked or suspended. Through this time period, the milk products produced by Defendant Aurora were labeled with words and images indicating that the products were organically produced, and all products included the USDA Organic seal. Their products were

then sold to the Retailer Defendants, which, in turn, sold the milk and milk products under their private labels[7] or Defendant Aurora's High Meadow brand. The Retailer Defendants did not process, handle or label the milk Defendant Aurora sold to them. Instead, they purchased milk that was processed, packaged and labeled by Defendant Aurora.

Plaintiffs claim that during the period from 2003 to August 23, 2007, the milk did not meet federal standards, and state that it should not have been labeled as organic. Plaintiffs assert that they paid more for the milk because it was labeled as organic. As a result, they seek recovery under various torts, including negligence per se, breach of express warranty, negligent misrepresentation, and state consumer protection laws.

The Retailer Defendants, Defendant Aurora, and Defendant QAI have all filed motions to dismiss in this action, and Defendants have also filed a Motion to Strike Plaintiffs' Notice of Supplemental Authority. These Motions will be addressed in this Memorandum and Order. Because the Court finds that the dismissal of Plaintiffs' claims is appropriate, Defendants' Motion to Strike the Consolidated Complaint [doc. #96] and Plaintiffs' Motion for Leave to File Amended Class Action Complaint [doc. #116] will be denied as moot.

## III.    DISCUSSION

### A.    *MOTION TO STRIKE*

On January 9, 2009, Plaintiffs filed a Notice of Supplemental Authority [doc. #124]. Plaintiffs stated that the purpose of this Notice was to submit copies of two recent court decisions and provide the Court with a brief analysis of these cases. Defendants assert that this was improperly filed without leave from the Court and ask that the Court either strike Plaintiffs'

---

[7] Products are sold under private labels where a retailer contracts with producers to manufacture, package and label a product, and the retailer then sells the product under their own name, or private label.

Notice or grant Defendants leave to file a response. Subsequently, Plaintiffs filed a second Notice of Supplemental Authority on March 18, 2009, also without seeking leave from the Court. Defendants did not ask that this notice be stricken, and instead filed responses to the Second Notice.

"Additional memoranda may be filed by either party only with leave of Court." Local Rules 7-4.01(c). Under the Local Rules, Plaintiffs needed leave to file these Notices. *See Ronwin v. Ameren Corp.*, 2007 WL 4287872, at \*2 (E.D. Mo. Dec. 6, 2007). Plaintiffs should have filed a motion for leave along with their proposed Notice of Supplemental Authority. The Court expects the Parties "to abide by the Federal Rules of Civil Procedure and Local Rules" and will strike Plaintiffs' Notices, and the responses filed to the Second Notice. *Id.* Irrespective of striking these documents, the Court will nevertheless consider these cases, and ascertain the relevance of these cases to the pending Motions.

## B. DEFENDANT AURORA'S MOTION TO DISMISS

Plaintiffs' ability to succeed on their claims requires that the Court find that Defendant Aurora was not entitled to the benefits of having their milk and milk products labeled as organic. Defendants assert that Plaintiffs' claims cannot succeed because they are preempted by federal law.[8] Where there is a "conflict between federal and state law," that conflict "must be resolved in favor of federal law." *United Steelworkers of America ALF-CIO-CLC v. Johnson*, 830 F.2d 924 (8th Cir. 1987); *see also Integrated Solutions, Inc. v. Service Support Specialties, Inc.*, 124 F.3d 487, 497 (3d Cir. 1997). This requirement can be found in the Constitution, which declares that

---

[8] The Supreme Court has "held repeatedly that state laws can be pre-empted by federal regulations as well as by federal statutes." *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 40 n.24 (2007) (quoting *Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 713 (1985)).

"the laws of the United States 'shall be the supreme Law of the Land; . . . any Thing in the Constitution of Laws of any state to the Contrary notwithstanding.'" *Altria Group, Inc. v. Good*, 129 S.Ct. 538, 543 (2008); (quoting U.S. Const. art. VI, cl. 2). As a result, "state laws that conflict with federal law are 'without effect.'" *Altria Group, Inc.*, 129 S.Ct. at 543 (citing *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)).

To determine whether a federal statute preempts state law, the Court must consider "[t]he purpose of Congress." *Altria Group, Inc.*, 129 S.Ct. at 543 (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). Congressional intent can be determined by considering the statute itself and any agency regulations enacted under that statute. *U.S. Dept. of Justice v. Reporters Committee for Freedom of Press*, 489 U.S. 749 (1989); *City of New York v. F.C.C.*, 486 U.S. 57, 63 (1988). When looking at the statute itself, preemptive intent may be indicated "through a statute's express language or through its structure and purpose." *Altria Group, Inc.*, 129 S.Ct. at 543 (citing *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977)). The Court must conduct "a close examination of the particular statutes and regulations at issue. '[E]ach case turns on the particularities and special features of the federal regulatory scheme in question.'" *Oxygenated Fuels Ass'n Inc. v. Davis*, 331 F.3d 665, 668 (9th Cir. 2003) (quoting *City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 638 (1973)).

"Consumer protection is quintessentially a 'field which the States have traditionally occupied.'" *Waters v. Wachovia Bank, N.A.*, 550 U.S. 1, 35-36 (2007) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). Where preemption is asserted over an area that has traditionally been regulated by the states, the Court must begin its review with the assumption that there is no preemption "unless that was the clear and manifest purpose of Congress." *Altria Group, Inc.*, 129 S.Ct. at 543 (quoting *Rice*, 221 U.S. at 230).

Preemption of a state law may be "either express or implied." *Gade v. National Solid Wastes Management Ass'n*, 505 U.S. 88, 98 (1992). There are two types of implied preemption: field preemption and conflict preemption. *Gade*, 505 U.S. at 98. The Court will consider all three types of preemption separately.

### 1.    *Express Preemption*

Express preemption occurs when preemption is "expressly stated in the statute's language." *Id.* The OFPA does contain some express preemptive language. Specifically, the statute permits states to create their own organic certification programs, however, programs must be approved by the Secretary of Agriculture. 7 U.S.C. § 6507; 65 Fed. Reg. at 80,616-19. State officials must "prepare and submit a plan for the establishment of a State organic certification program to the Secretary for approval." 7 U.S.C. § 6507(a). A state organic certification program will "not become effective until approved by the Secretary." 7 U.S.C. § 6507(b)(2)(D). As a result, any organic certification program that existed before the OFPA was enacted is expressly preempted, as is any program that has not been granted approval. This preemptive effect was recognized in the regulations established under the OFPA. 65 Fed. Reg. 80,682 ("OFPA and these regulations do preempt State statutes and regulations related to organic agriculture.")

However, while the OFPA explicitly preempts the establishment of state organic certification programs that do not meet certain requirements, the OFPA does not contain express statutory language indicating that it is intended to preempt tort claims under consumer protection statutes or common law. *See Huang v. Gateway Holdings*, 520 F.Supp.2d 1137, 1141 (E.D. Mo. 2007). As a result, Plaintiffs' claims are not expressly preempted, and the Court must consider field and conflict preemption.

## 2.    *Field Preemption*

Field preemption is a type of implied preemption.  Field preemption exists where Congressional intent to supersede state law is implied from the extensive regulation of a field, such that "Congress left no room for the States to supplement it."  *Gade*, 505 U.S. at 98 (quoting *Rice*, 331 U.S. at 230).  The regulation must be "so pervasive in scope that it occupies the field." *Pet Quarters, Inc. v. Depository Trust & Clearing Corp.*, 2009 WL 579270, at *5 (8th Cir. March 9, 2009) (citing *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982)).

When Congress enacted the OFPA and the NOP, it created an extensive set of regulations. However, Congress expressly left room for the establishment of state organic certification programs.  7 U.S.C. § 6507; 65 Fed. Reg. at 80,616-19.  As a result, "there is a remaining area which is the subject for appropriate state regulation."  *Goldberg v. Wade Lahar Const. Co.*, 290 F.2d 408, 414 (8th Cir. 1961); *see also Nash v. Resources, Inc.*, 982 F. Supp. 1427, 1439 (D. Or. 1997).  Plaintiffs rely upon the allowance of state organic certification programs as support for their argument that field preemption should not bar their claims.

The Court has reviewed the OFPA and NOA, and it is clear that the area in which state regulation is permitted is narrow.  While  states may establish their own organic certification programs, the OFPA, "establish[es] national standards governing the marketing of certain agricultural products as organically produced products."  7 U.S.C. § 6501(1).  The OFPA establishes a regulatory scheme that is similar to the Occupational Safety and Health Act ("OSHA").  *See Gade*, 505 U.S. at 97.  The Supreme Court has considered the preemptive effect of the OSHA, and found that "the only way a State may regulate an OSHA-regulated occupational safety and health issue is pursuant to an approved state plan" and all other state regulations were preempted.  *Id.* at 99.  Under this reasoning, states may regulate organic

producers through the establishment of state organic certification programs, however, field preemption bars state consumer protection statutes and the common law from being used in this manner. *See Gade*, 505 U.S. at 98. The Court agrees with Defendants that Plaintiffs' claims are barred by the doctrine of field preemption, however, the Court's dismissal of Plaintiffs' claims is based upon conflict preemption, which is discussed below.

### 3. *Conflict Preemption*

The second type of implied preemption occurs when an actual conflict exists between federal and state law. *Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982). "Conflict preemption exists where a party's compliance with both federal and state law would be impossible or where state law would pose an obstacle to the accomplishment of congressional objectives." *Pet Quarters, Inc.*, 2009 WL 579270, at *6 (citing *Whistler Invests., Inc. v. Depository Trust & Clearing Corp.*, 539 F.3d 1159, 1166 (9th Cir. 2008)). "Even where concurrent regulation is not totally precluded, however, state and local enactments are nullified to the extent that they actually conflict with federal law." *Ensco, Inc. v. Dumas*, 807 F.2d 743, 745 (8th Cir. 1986) (citing *Hillsborough County v. Automated Medical Laboratories*, 471 U.S. 707, 713 (1985)).

When Congress passed the OFPA, they created a federal regulatory scheme with "national standards for organic production so that farmers know the rules, so that consumers are sure to get what they pay for, and so that national and international trade in organic foods may prosper." *See* S. Rep. No. 101-357 at 4943. The preamble to the OFPA states that the statute is intended "(1) to establish national standards governing the marketing of certain agricultural products as organically produced; (2) to assure consumers that organically produced products

meet a consistent standard; and (3) to facilitate interstate commerce in fresh and processed food that is organically produced." 7 U.S.C. § 6501.

The OFPA establishes a detailed procedure that is used to determine what products may be labeled organic or "sold and labeled as organically produced." 7 U.S.C. § 6506; *see also* 7 U.S.C. § 6504-05. From 2003 to the present, Defendant Aurora has held certifications from USDA accredited certifying agents. These certifications permit Defendant Aurora to label its milk as "100 percent organic" or "organic," and it also permits the use of the USDA Organic seal and the seal of Defendant QAI as the certifying agent. 7 C.F.R. § 205.303.

Plaintiffs' state law claims seek to bar producers from using these terms or seals even if a producer's certification has not been revoked or suspended. As a result, for Plaintiffs' claims to succeed, the Court would have to invalidate the regulatory scheme established under the OFPA and NOA. These state claims ask that the Court find that the certification determinations under that scheme were invalid and insufficient under these various state laws. Producers would be liable even where fully certified and authorized under the regulations to use these terms and seals. This is directly contrary to congressional intent in enacting the OFPA and NOP. *See Gade*, 505 U.S. at 103; *Murphy v. SmithKline Beecham Animal Health Group*, 898 F.Supp. 811, 816 (D. Kan. 1995).

All of the damages Plaintiffs claim result from Defendants' actions "in conformity with the" requirements of the OFPA and NOP. *See Pet Quarters*, 2009 WL 579270, at *7. "A favorable ruling on any of them would necessarily conflict with the" OFPA and NOP's control of the labeling, marketing and sale of organic products, "and pose an obstacle to the congressional objectives" in enacting these statutes. *Id*, at *6.

The Court acknowledges that some of the goals behind the OFPA, NOP and these state statutes are the same, however, this does not work to save Plaintiffs' claims. *Gade*, 505 U.S. at 103. Regardless of the legislative intent behind the statute, "[a] state law also is pre-empted if it interferes with the methods by which the federal statute was designed to reach th[at] goal." *Id.* (quoting *International Paper Co. v. Ouellette*, 479 U.S. 481, 813 (1987)). Allowing these claims would create a "serious danger of conflict with the administration of the federal program" because these claims, to proceed, would intrude upon the comprehensive scheme in the OFPA and NOP, frustrating congressional intent. *Howard v. Uniroyal, Inc.*, 719 F.2d 1552, 1561 (11th Cir. 1983).

The OFPA and NOP were established so that organic producers, such as Defendant Aurora, and retailers, such as the Retailer Defendants, could rely upon the federal regulatory scheme and the certifications awarded under that scheme. Plaintiffs' claims attempt to erode the "national standards" that the OFPA and NOP were intended to establish. 7 U.S.C. § 6501. Allowing these claims would result in varying requirements under state law, frustrating the goal of developing a consistent, comprehensive federal regulatory scheme. These private remedies, contrary to Plaintiffs' argument that they are enforcing federal law, do not aid the functioning of these statutes, and instead hinder their ability to establish national standards and facilitate interstate commerce.

If Plaintiffs' claims were permitted to proceed, Defendant Aurora's certifications, valid under federal law, would nevertheless be subject to challenge under the statutes and common laws of all fifty states. Any claimant merely suspecting that part of a producer's operation was in any way out of organic compliance, or motivated to interfere with a compliant certified operation, could bring lawsuits such as this. Permitting such suits would pose a clear "obstacle to the

accomplishment of congressional objectives." *Pet Quarters, Inc.*, 2009 WL 579270, at *6 (citing

*Whistler Invests., Inc.*, 539 F.3d at 1166). This conclusion does not permit producers who

engage in unacceptable behavior to escape penalties, because legitimate complaints have a remedy

within the structure of the statutory scheme.[9]

The Court recognizes that Plaintiffs allege that Defendant Aurora's milk was not actually

organic because it failed to satisfy federal production requirements, including their failure to

provide;

> [A]ppropriate housing, pasture conditions, and sanitation practices . . . suitable access
> to the outdoors, shade, shelter, exercise areas, fresh air, and direct sunlight . . . proper
> access to pasture . . . appropriate clean, dry bedding . . . feed ration composed of
> agriculture products, including pasture and forage, that are organically produced and,
> where applicable, organically handled . . . continuous organic management from the
> last third of gestation . . . [and] a one-year period of continuous organic management
> [before the cows were entered into organic milk and milk products.]

*See* Plaintiffs' Consolidated Class Action Complaint ¶ 72. However, during the entire period
Plaintiffs allege the milk and milk products were not meeting organic production standards,

Defendant Aurora was a certified organic operation. Federal law is clear that "[o]nce certified, a

production or handling operation's organic certification continues in effect until surrendered by

the organic operation or suspended or revoked by the certifying agent, the State organic

program's governing State official, or the Administrator." 7 C.F.R. § 205.404(c). Defendant

Aurora's organic certifications were never surrendered, suspended or revoked. They remained in

effect through the entire period of time in which Plaintiffs allege that Defendant Aurora was not

meeting organic standards.

---

[9] Once certified, organic producers go on into perpetuity, unless their certification is
surrendered or "suspended or revoked by the certifying agent . . ." 7 C.F.R. § 205.404(c).
However, this does not insulate them from civil or criminal penalties. Federal law provides for "a
civil penalty of not more than $10,000" for placing food mislabeled as organic into interstate
commerce, and criminal penalties may be applied where a person makes a false statement to the
USDA or a certifying agent. *See* 7 U.S.C. § 6519(a); 6519(b).

Irrespective of whether Defendant Aurora was meeting the organic standards established under the OFPA and NOP, Defendant Aurora was a certified operation, and was fully entitled under the OFPA and NOP to label, market and sell its products as organic. Defendant Aurora would only have been barred from marketing its products as organic if the certifications had been suspended or revoked, or if Defendant Aurora surrendered these certifications. This never happened, and pursuant to federal law, Defendant Aurora was allowed to continue labeling, marketing and selling its products as organic. Plaintiffs' claims are preempted because these state laws "pose an obstacle to the accomplishment of congressional objectives." *Pet Quarters, Inc.*, 2009 WL 579270, at *6 (citing *Whistler Invests., Inc.*, 539 F.3d at 1166). The doctrine of conflict preemption bars Plaintiffs from recovering for conduct that was absolutely in compliance with federal law.

## C. RETAILER DEFENDANTS' MOTION TO DISMISS

### 1. *These Claims are Based upon Plaintiffs' Claims Against Defendant Aurora*

Plaintiffs' claims against the Retailer Defendants depend upon their claims against Defendant Aurora. All of Plaintiffs' claims against the Retailer Defendants are based upon the premise that they misrepresented or engaged in deceptive acts when they labeled and advertised Defendant Aurora's products as organic or made representations about the organic status of the milk and milk products.[10]

---

[10] In the Consolidated Class Action Complaint, Plaintiffs allege that the Retailer Defendants did not merely use the USDA Organic seal, or the words "organic," "100% organic," and "made with organic ingredients," but also assert that they are liable for their use of images depicting cows in open fields and certain statements made on the product packaging. *See* 7 C.F.R. § 205.303. The product packaging statements for which Plaintiffs seek to recover are statements related to the care that is provided to Defendant Aurora's cows, including: "[a]s producers of organic milk, our motto is 'Cows First,'" "[a]ll of our cows receive a balanced diet of 100% organic feed, organic pasture and clean fresh water," and "[o]ur herds are always outside in the fresh air and sunshine." In their Motion to Strike the Consolidated Complaint, Defendants

Because Plaintiffs' claims against Defendant Aurora are preempted, the Retailer

Defendants cannot be liable. Defendant Aurora possessed valid certifications, and was authorized

to label its milk and milk products as organic. As a result, Plaintiffs' claims against the Retailer

Defendants also must fail. *See, e.g. Taylor AG indus. v. Pure-Gro*, 54 F.3d 555, 562 (9th Cir.

1995) (where "the distributor's liability is essentially predicated upon the language in the

manufacturer's label, we apply. . . preemption equally to manufacturers and distributors."). As

the Court has previously stated, Defendant Aurora's use of terms and seals indicating that their

products are organic is permitted under the OFPA and NOP, as Defendant Aurora possessed valid

certifications. Therefore, the Retailer Defendants cannot be liable for selling these products.

## 2. *Retailers are Exempt from the Certification Requirements of the OFPA and NOA*

Even if the claims against Defendant Aurora were not preempted, Plaintiffs' claims against

the Retailer Defendants would still fail. Retailers are exempt from the certification requirements

of the OFPA and the NOA. The OFPA regulates "producers" and "handlers" and clearly states

that retailers are exempt from its requirements. *See, e.g.* 7 U.S.C. § 6502 (defining the term

handler to include "any person engaged in the business of handling agricultural products, except

such term shall not include final retailers of agricultural products that do not process agricultural

products").

The Retailer Defendants contracted with Defendant Aurora for what is known as "private

label products." Essentially, they purchased milk that was processed, packaged and labeled by

Defendant Aurora. The Defendants then either sold the milk under their own private label, or

---

object to these claims, stating that they are markedly different from the original lawsuits, which
did not base the Retailer Defendants' liability on their own advertising. The Court finds that
dismissal is appropriate, regardless of the basis for Plaintiffs' claims; if Defendant Aurora held
valid certifications to market its milk as organic, then the Retailer Defendants were entitled to do
the same.

under Defendant Aurora's High Meadow label. The USDA provided a clarification on the status

of private label products, declaring that these:

> are items for which a retailer contracts with a processor to produce the product to the retailer's specifications and to be sold under the retailer's name. Commenters believe that the proposed rule was unclear on the certification requirements for these products. Any product labeled as "100 organic," "organic," or "made with * * *" must be certified regardless of the business arrangements under which the product was produced. When a retail operation contracts for the production, packaging, or labeling of organic product, it is the certified production or handling operation that is responsible for complying with the applicable organic production or handling requirements.

65 Fed. Reg. 80,557. The Retailer Defendants were not "producers" or "handlers" under the

OFPA or NOA. Instead, they acted as final retailers who did not process or repackage products,

and are exempt from regulation under the OFPA and NOA. 65 Fed. Reg. 80,557; 7 U.S.C. §

6502. To be liable for violating the OFPA or NOA, a retailer must have independently violated

the OFPA or NOP. *See* USDA Q&A on Applicability. Plaintiffs have not alleged that the

Retailer Defendants independently violated the OFPA or NOA by failing to provide the cows with

adequate pasture time, organic feed, or satisfy any other requirement, and they therefore cannot

be liable for any violation of OFPA and NOA standards.

**3.**     ***Plaintiffs Cannot Recover for the Retailer Defendants' Own Statements on any***
***Labeling or Market Information***

Plaintiffs allege that the Retailer Defendants should be liable because some of the

statements on the milk products were Defendants' own statements.[11] These claims fail because

the USDA has issued regulations enumerating what may be included on "any other panel of the

package and on any labeling or market information concerning the product." 7 C.F.R. § 205.303.

---

[11] In their Motion to Strike the Consolidated Complaint, Defendants object to these claims, stating that they are markedly different from the original lawsuits, which did not base the Retailer Defendants' liability on their own advertising.

The regulations define market information as "[a]ny written, printed, audiovisual or graphic information, including advertising, pamphlets, flyers, catalogues, posters and signs, distributed, broadcast, or made available outside of retail outlets that are used to assist in the sale or promotion of a product." 7 C.F.R. § 205.2.

These regulations demonstrate that the USDA has authority over language and graphics used in labeling organic products, and the Retailer Defendants' representations clearly fall within what is permitted under the OFPA and NOA. The Retailer Defendants were selling milk that was certified organic, and they were authorized to place statements and images related to organic production on the labels of these products "to assist in the sale or promotion of a product." 7 C.F.R. § 205.2. If Defendant Aurora had not been a certified producer and the Retailer Defendants had made these statements, the Retailer Defendants would have been subject to civil penalties. *See* 7 C.F.R. Part 205, Subpart D. However, this is not the case, and the Retailer Defendants were permitted under the OFPA and NOA to make these statements.

*4.      The Retailer Defendants Had No Duty to Investigate Defendant Aurora's Compliance with OFPA and NOA Regulations*

Plaintiffs attempt to claim that the Retailer Defendants should have investigated Defendant Aurora's activities to ensure that they were in compliance with the OFPA and NOA. However, one reason for the establishment of the OFPA and NOP was so retailers, such as the Retailer Defendants, could rely upon the federal regulatory scheme and the certifications awarded under that scheme. *See Morgan v. Powe Timber*, 367 F.Supp.2d 1032, 1043 (S.D. Miss. 2005). Defendant Aurora possessed valid certifications from 2003 to the present. The Retailer Defendants did not have any duty to inspect Defendant Aurora's facilities, or the facilities of any of their other organic producers. Imposing such a requirement "would place an undue burden on

the distributor who is least likely to have access to such information." *Taylor AG Industries v. Pure-Gro*, 54 F.3d 555, 563 (9th Cir. 1995).

Additionally, it is important to note that the responsibility for inspecting facilities and reviewing certified operations rests with USDA accredited certifying agents, and not the Retailer Defendants. In fact, the USDA has declared that when a complaint is received, "[c]ertifying agents . . . will receive, review and investigate complaints alleging violations of the Act or these regulations . . . Citizens have no authority under the NOP to investigate complaints alleging violation of the Act or these regulations." 65 Fed. Reg. 80,627. This language expressly bars the very actions that the Plaintiffs demand the Retailer Defendants take.

It is clear that even if the claims against Defendant Aurora were not preempted, the claims against the Retailer Defendants would still fail. Plaintiffs have failed to state a claim for which relief may be granted against the Retailer Defendants, and these claims must be dismissed.

## D.    DEFENDANT QAI'S MOTION TO DISMISS

Defendant QAI is the certifying agent for Defendant Aurora's Texas-based farms, and Defendant Aurora's milk processing plant in Colorado. Plaintiffs' claims against Defendant QAI are based upon their statement that:

> QAI either knew or should have known of these violations of organic principles and federal regulations. Despite this knowledge, QAI continued to certify that the milk and milk products produced, marketed and sold by Aurora were "organic" and produced in compliance with NOP requirements, violating 7 C.F.R. § 205.201(a)(3). Nor, at any time did QAI revoke or suspend Aurora's certification.

Consolidated Class Action Complaint ¶ 108. Essentially, Plaintiffs are asserting that Defendant QAI should have revoked Defendant Aurora's certifications, however, these claims directly contradict the  the OFPA and NOP.

"If a certifying agent has reason to believe, based on the on-site inspection and a review of the information specified in § 205.404, that a certified operation is not complying with the requirements of the Act and regulations" the certifying agent must then "provide a written notification of noncompliance to the operation in accordance with § 205.662." 7 C.F.R. § 205.406(c). If the certifying agent finds that the violation is willful, it "shall send the certified operation a notification of proposed suspension or revocation of certification of the entire operation or a portion of the operation, as applicable to the noncompliance." 7 C.F.R. § 205.662(d). Neither provision allows the certifying agent to outright suspend or revoke a producer's certifications.

Once notification is provided to the operation, the regulations dictate an extensive process involving mediation and other resolution procedures, during which time, "the certifying agent . . . must not send a notification of suspension or revocation." 7 C.F.R. § 205.662(e)(2). It is clear that, as long as Defendant Aurora's certifications were not suspended or revoked, the regulations mandated that Defendant QAI continue to "certify that the milk and milk products produced, marketed and sold by Aurora were 'organic' and produced in compliance with NOP requirements." Consolidated Class Action Complaint ¶ 108. Plaintiffs attempt to recover from Defendant QAI because it never "revoke[d] or suspend[ed] Aurora's certification." However, it is clear under these regulations that Defendant QAI was not authorized to do what Plaintiffs demand.

Additionally, Plaintiffs also seek to recover from Defendant QAI for misrepresentations that they assert Defendant QAI made. They state that Defendant QAI made false or misleading statements that Defendant Aurora's products were organically produced, and seek to recover from Defendant QAI because it failed to inform the public that Defendant Aurora was not

complying with requirements under the OFPA and NOA. Plaintiffs' claims are preempted because federal law requires that certifying agents "[m]aintain strict confidentiality with respect to its clients under the applicable organic certification program and not disclose to third parties (with the exception of the Secretary . . .) any business-related information concerning any client obtained while implementing the regulations in this part." 7 C.F.R. § 205.501(10). As a certifying agent, Defendant QAI was not permitted to publicize any information about whether or not Defendant Aurora was complying with OFPA and NOA guidelines.

These claims present the Court with a clear example of conflict preemption. "Conflict preemption exists where a party's compliance with both federal and state law would be impossible." *Pet Quarters, Inc.*, 2009 WL 579270, at *6 (citing *Whistler Invests., Inc.*, 539 F.3d at 1166). Plaintiffs are asserting that these state laws require Defendant QAI to have revoked or suspended Defendant Aurora's certifications and inform consumers that Defendant Aurora was not complying with OFPA and NOA regulations, however, what Plaintiffs assert that these state laws require is barred by federal law. Defendant QAI simply cannot comply with both requirements, and as a result, these state laws must be preempted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Strike the Consolidated Complaint [doc. #96] is **DENIED, as moot.**

**IT IS FURTHER ORDERED** that Motion to Dismiss of Aurora Dairy Corporation [doc. #98] is **GRANTED.** All claims against Defendant Aurora are **DISMISSED, with prejudice.**

**IT IS FURTHER ORDERED** that Motion to Dismiss of the Retailer Defendants [doc. #102] is **GRANTED.** All claims against the Retailer Defendants are **DISMISSED, with prejudice.**

**IT IS FURTHER ORDERED** that Motion to Dismiss of Defendant QAI, Inc. [doc. #104] is **GRANTED.** All claims against Defendant QAI are **DISMISSED, with prejudice.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File Amended Class Action Complaint [doc. #116] is **DENIED, as moot.**

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike and Memorandum in Support Regarding Plaintiffs' Submission Styled "Notice of Supplemental Authority" [doc. #125] is **GRANTED.** The Court strikes Plaintiffs' Notices and the Responses filed to the Second Notice.

So Ordered this 3rd Day of June, 2009.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE